# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **F. JEFF DUNCAN, JR.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 3:09-00989** |
| | ) | **Judge Sharp** |
| **MILLIMAN, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

After Plaintiff took early retirement from his employment as Vice-President, Chief Information Officer, and Director of Technology at Louisiana-Pacific Corporation ("LP"), he sued Defendant Milliman, Inc. ("Milliman") for negligent misrepresentation because of allegedly inaccurate information contained in a benefit statement relating to an LP sponsored Supplemental Executive Retirement Plan ("SERP" or "Plan"). Milliman has filed a Motion for Summary Judgment (Docket No. 12), and Plaintiff has filed a Cross Motion for Summary Judgment (Docket No. 29). Plaintiff has also filed a Motion for Partial Summary Judgment to Establish Defendant's Liability (Docket No. 32). For the following reasons, the Court will grant Milliman's motion and deny Plaintiff's motions.[1]

## I. FACTUAL BACKGROUND

Milliman provides actuarial consulting and other services to LP, including the preparation of periodic benefit statements for each participant in the SERP. The benefit statements include,

---

[1] With these rulings, Milliman's Motion Pursuant to Rule 56(f) (Docket No. 44) in which its seeks denial of Plaintiff's Motion for Partial Summary Judgment or, alternatively, an extension of discovery is rendered moot, as is Plaintiff's Motion to Ascertain Status of Pending Motions for Summary Judgment (Docket No. 55) .

among other items, information regarding each participant's status in the Plan, an estimate of a participant's projected benefits, and a summary of Plan provisions. As a participant in the SERP, Plaintiff received benefit statements from Milliman, including a statement with estimates of projected benefits as of January 1, 2008.

On October 17, 2008, after learning that LP planned "a significant reduction in force as the result of difficult industry conditions," Plaintiff reevaluated his retirement options. (Docket No. 1 at 1-2). In making that reevaluation, Plaintiff claims he considered the SERP benefit statement which indicated that he had an "accrued benefit" of $1,234,572 as of January 1, 2008. Allegedly in reliance on that statement, Plaintiff told his superiors on October 23 and 24, 2008 that he was willing to be included in the anticipated reduction in force.

By letter dated October 29, 2008, Milliman informed LP that (assuming a termination date of November 15, 2008), Plaintiff's Estimated Retrirement Benefit was $517,103.10. Two days later, on October 31, 2008, Plaintiff was told that he and a few other executives would be terminated, and was provided a letter on November 3, 2008, confirming the termination. At that same time, Plaintiff was informed of the $517,103.10 estimated amount of his retirement benefits. Plaintiff claims that had he known this was the actual amount instead of the $1,234,572 he anticipated, he never would have volunteered to be terminated.

On November 19, 2008, Milliman provided Plaintiff with an "Explanation of SERP Benefit" that included the revised, lower amount, and that explained the January 1, 2008 benefits statement showing the estimated "accrued benefit" was based on the normal retirement age of 62 and service through December 31, 2007. Plaintiff contends that this explanation was inconsistent and contradicted the January 1, 2008 benefit statement's reference to the "accrued benefit" at age 53,

2

and omitted the "Date of Termination" provision on which Plaintiff relied in making the decision to

volunteer to be a part of the staff reduction.

At some point, a Separation Agreement ("Separation Agreement" or "Agreement") was

drafted by LP and sent to Plaintiff for his review.[2]  Pursuant to that Agreement, Plaintiff was to

receive more than $125,000 under LP's Severance Policy, and additional severance pay as follows:

> A. In consideration of this Agreement, Duncan shall be entitled to receive the sum of $150,072.48 as additional severance pay, to be paid in biweekly installments beginning with the payroll period following the separation date, pursuant to LP's standard payroll processing cycle, until paid in full to Duncan or until March 15, 2010, whichever comes first.  Severance Pay is subject to all required withholdings and payment may be accelerated at LP's sole discretion.
>
> B. Duncan shall receive $15,205.20 representing the twelve (12) months cash value of COBRA.  A lump sum payment shall be made as soon as practicable following the Separation Date, less required withholdings.
>
> C. LP agrees to pay the cost of outplacement services for Duncan rendered by a national outplacement firm designated by LP during the period of six (6) months immediately following his/her separation date.  The outplacement services can begin on a date of Duncan's choosing but must begin on or before the date of separation.
>
> D. Duncan acknowledges that but for this Agreement he is not entitled to any of these amounts or outplacement services. Duncan shall begin receiving these amounts or outplacement services as soon as is practicable following the expiration of the right to revoke this Agreement or the Separation Date, whichever shall occur later, provided that Duncan has fulfilled all obligations and duties under this Agreement as of the payment date.

(Docket No. 12-3 at 3).

Most pertinent to the parties' cross motions for summary judgment are two paragraphs in the

Separation Agreement.  Paragraph 5, titled "Employee Benefit Plans," provides:

---

[2] In the "Definitions" section of the Agreement, LP is defined to "mean Louisiana-Pacific Corporation, its officers, directors, employees, agents, parent corporations, divisions, affiliates, subsidiaries, attorneys, insurers, successors and assigns." (Docket No. 12-3, at 1). Plaintiff concedes that Milliman served as LP's agent for the purpose of preparing SERP benefit statements sent to participants in the SERP.

Duncan has or may have accrued benefits and rights under LP's employee benefit plans, including, without limitation, pension benefit plans, health and welfare benefit plans, insurance coverages, the terms of all of which are incorporated herein by this reference. All benefits and rights arising out of such plans and programs shall be payable or exercisable upon termination of Duncan's employment on his Separation Date solely in accordance with the terms of those plans, programs and related agreements in effect on that Separation Date. The terms of plans, programs and related agreements shall determine all rights thereunder.

(Id. at 4). Paragraph 8, titled "Release," provides:

Release. Except as otherwise provided herein, Duncan irrevocably and unconditionally releases, acquits and forever discharges LP from any and all charges, complaints, claims, promises, agreements, controversies, liabilities, obligations, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorney's fees and costs actually incurred), of any nature whatsoever, known, whether based on contract, statute or common law, or unknown which he now has, owns, or holds, or claims to have, own, or hold, or to have had, owned, or held, against any of the parties so released[.]

(Id. at 5).

Plaintiff returned a signed and initialed copy of the Separation Agreement to LP. However, he also added a handwritten addendum to the "Release" clause which read: "This shall not preclude the right to pursue actions regarding my SERP Benefit including those provided in that Plan." (Id.). The proposed addendum to the Agreement was not acceptable to LP, and Plaintiff was so informed.

Plaintiff signed the Agreement, as originally drafted, on January 9, 2009. Plaintiff claims he informed a Vice-President in LP's Human Resources Department that he was signing the Agreement without the language he had requested because his lawyer informed him that claims arising out of, or relating to, the SERP were expressly and unambiguously excepted from the release. LP initialed and signed the original Agreement on January 13, 2009.

In August 2009, Plaintiff was paid a SERP benefit "close[] to the 'revised' amount Milliman computed[.]" (Docket No. 26, Duncan Aff. ¶ 34). Subsequently, Plaintiff filed suit in this Court

4

based on the alleged negligent misrepresentation by Millimian in preparing the January 1, 2008 benefit statement.  He asserts he was induced to volunteer for retirement or a termination from LP because the benefit statement (at least as he understood it) indicated that he was entitled to receive a significantly higher SERP than that actually paid.

## II. STANDARD OF REVIEW

"The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation."  Ferro Corp. v. Cookson Group, PLC, 585 F.3d 946, 949 (6th Cir. 2009). A party may obtain summary judgment if the evidence establishes there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000).   A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in his or her favor.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III.  LEGAL DISCUSSION

Based upon the language in the Separation Agreement, the parties have filed cross-motions for summary judgment.  Additionally, Plaintiff has filed a motion for partial summary judgment on the issue of liability, arguing that there are no genuine issues of material fact and he is entitled to judgment as a matter of law on his claim that Milliman negligently misrepresented the state of his retirement benefits when it issued the January 1, 2008 benefit statement.  Because the Court finds that the Separation Agreement releases Plaintiff's claim for negligent misrepresentation, the Court will grant Milliman's Motion for Summary Judgment, and deny Plaintiff's Motions for Summary

5

Judgment.

The parties agree that Plaintiff and LP executed the Separation Agreement for which Plaintiff received consideration, that it contains a release in favor of LP and LP's agents, that Milliman is an agent for purposes of the release contained in the Agreement, and that the Agreement is to be construed under Tennessee contract law. They part company on the issue of whether Paragraphs 5 and 8 released Plaintiff's claim for negligent misrepresentation against Milliman.

"A release is a contract and the rules of construction applied to contracts are used in construing a release." Peatross v. Shelby County, 2009 WL 2922797 at *2 (Tenn. Ct. App. Sept. 10, 2009) (citing, Richland Country Club, Inc. v. CRC Equities, Inc., 832 S.W.2d 554, 557 (Tenn. Ct. App. 1991)). The rules underlying construction of a contract are well-known, and have been reviewed by the Tennessee Supreme Court as follows:

> A cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties. Christenberry v. Tipton, 160 S.W.3d 487, 494 (Tenn. 2005). In interpreting contractual language, courts look to the plain meaning of the words in the document to ascertain the parties' intent. Planters Gin Co. v. Fed. Compress & Warehouse Co., 78 S.W.3d 885, 889-90 (Tenn. 2002). Th[e] Court's initial task . . . is to determine whether the language is ambiguous. Id. at 890. If the language is clear and unambiguous, the literal meaning controls the outcome of the dispute. Id. If, however, the words in a contract are susceptible to more than one reasonable interpretation, the parties' intent cannot be determined by a literal interpretation of the language. Id.

> Contractual language "is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." Farmers-Peoples Bank v. Clemmer, 519 S.W.2d 801, 805 (Tenn. 1975)[.]

> When contractual language is found to be ambiguous, the court must apply established rules of construction to determine the intent of the parties. Planters Gin Co., 78 S.W.3d at 890. An ambiguous provision in a contract generally will be construed against the party drafting it. Hanover Ins. Co. v. Haney, 221 Tenn. 148, 425 S.W.2d 590, 592 (1968); Vargo v. Lincoln Brass Works, Inc., 115 S.W.3d 487, 492 (Tenn. Ct. App. 2003). Furthermore, when a contractual provision is ambiguous, a court is permitted to use parol evidence, including the contracting parties' conduct

6

and statements regarding the disputed provision, to guide the court in construing and enforcing the contract. See, Memphis Housing Auth. v. Thompson, 38 S.W.3d 504, 512 (Tenn. 2001).

Allstate Ins. Co. v. Watson, 195 S.W.3d 609, 611-12 (Tenn. 2006).

In moving for summary judgment, Plaintiff argues that "[t]he plain language of the Separation Agreement is unambiguous" and that "Section 5 and 8 contain the clear exception from the release for all rights and benefits under any employment benefit plan of LP, of which the SERP is one." (Docket No. 31 at 5). Plaintiff also argues that "[i]f LP had not excepted from the release in Section 8 of the Separation Agreement all Plaintiff's rights under LP's employee benefit plans as provided in Section 5, LP would have violated ERISA Section 510 by interfering with Mr. Duncan's rights under the SERP." Id.

As Plaintiff argues, Section 510 of ERISA prevents interference with pension rights. Section 410(a) of ERISA also provides that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy," 29 U.S.C. § 1110(a). Moreover, a release of federal statutory rights must be "clear and unmistakable," Dotson v. Arkema, Inc., 397 Fed. Appx. 191, 194 (6th Cir. 2010), and, therefore, "ERISA waivers require closer scrutiny by the district court than waivers of general contract claims." Yak v. Bank Brussels Lambert, 252 F.3d 127, 131 (2nd Cir. 2001); see, Taylor v. Visteon Corp, 149 Fed. Appx. 422, 426 (6th Cir. 2004) (collecting cases) ("Like most legal claims, ERISA claims (including breach-of-fiduciary-duty claims) may be settled"). However, Paragraph 5 actually preserves Plaintiff's ERISA rights. What it does not do is enable Plaintiff to bring a negligent misrepresentation claim.

A negligent misrepresentation claim, and others like it, are unambiguously barred by Section

7

8 which released ""[e]xcept as otherwise provided [in the Separation Agreement], irrevocably and unconditionally . . . any and all . . . claims . . . damages, actions, causes of action, suits, rights, demands . . . , of any nature whatsoever, known . . . or unknown . . . against any of the parties so released[.]"  (Docket No. 12-3 at 5).  Even if, as Plaintiff claims, the phrase, "except as otherwise provided" in Paragraph 8 referred to Paragraph 5, Plaintiff does not bring a claim against Milliman seeking benefits in accordance with the written terms of the SERP plan, nor does he rely on the written terms of the SERP plan.

Rather, Plaintiff's claim is one under state tort law – negligent misrepresentation – and is based upon alleged misrepresentations made by Milliman in the January 1, 2008 benefit statement. He claims that because of his alleged reliance on the benefit statement, he was damaged by not continuing as an executive with LP for at least an additional 14 months (thereby attaining age 55 at his retirement), and seeks damages to compensate him for what he would have received had he not volunteered to separate from LP.  This is hardly a claim for "accrued benefits and rights under LP's employee benefit plans," as required by Paragraph 5.

Plaintiff's reliance on the recent Sixth Circuit decision in Bloemker v. Laborer's Local 265 Pension Fund, 605 F.3d 436 (6th Cir. 2011) is misplaced.  So far a relevant here, the Sixth Circuit held "that a plaintiff can invoke equitable estoppel in the case of unambiguous pension plan provisions where the plaintiff can demonstrate the traditional elements of estoppel, including that the defendant engaged in intended deception or such gross negligence as to amount to constructive fraud, plus (1) a written representation; (2) plan provisions which, although unambiguous, did not allow for individual calculation of benefits; and (3) extraordinary circumstances in which the balance of equities strongly favors the application of estoppel."  Id. at 444.

8

For any of a number of reasons, Bloemker is inapposite. There, unlike here, suit was filed

under ERISA after the exhaustion of plan remedies, with plaintiff claiming breach of contract,

material misrepresentation, and breach of fiduciary duties. The claims in Bloemker were against the

plan, the plan trustees, and the plan administrators, not the actuary of the plan, let alone an actuary

that is alleged only to have engaged in negligent misrepresentation under state law for which reliance

damages are sought. Further, the claims were based upon a certified statement of the benefits

plaintiff was entitled to under the plan, not, as here, an estimated benefit that listed a number of

variables. Moreover, there was no release involved in Bloemker, and certainly not a release that

forgoes all claims except those brought to recover benefits under the plan.

On point is the decision of Judge Trauger in El Paso Energy Corp. LTD Plan, 2008 WL

36128 (M.D. Tenn. Feb. 8, 2008). There, in conjunction with his termination after an injury, plaintiff

signed a Release which (similar to Paragraph 8 in this cases) "stated that the plaintiff 'hereby

release[s],' the defendants 'from any and all liabilities, demands, claims or suits of whatsoever nature

that I may have against the Parties Released arising from or in any way related to my employment

with the Employer.'" Id. at *7. The Release also contained language (similar to Paragraph 5 in this

case) that "'this Release does not release any claim (i) for continuation health care coverage under

COBRA, (ii) for benefits arising from any retirement plan or welfare plan (specifically including

benefits from the Employer's long-tern disability benefit plan) in which [the plaintiff] was a

participant during [his] employment, and (iii) for workers' compensation benefits available to [the

plaintiff]." Id.

In Judge Trauger's opinion, the language in the Release was neither "unclear or subject to

multiple interpretations," because "[t]he plain language of the Release releases all claims except

9

those for benefits under the defendants' retirement and welfare plans." Id. at **6 & 7. Judge Trauger further observed that "the obvious intent of the above language was to substitute any causes of action the plaintiff might have against the defendants and other covered parties – except for causes of action for benefits – in exchange for payment." Id.

Likewise in this case, the language in the Agreement is clear and unambiguous: it releases all claims against LP and its agents, except for benefits and rights under LP's employee benefit plans. That was the obvious intent of the parties and, because the "cardinal rule" of contract construction is "to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles," Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc., 521 S.W.2d 578, 580 (Tenn.1975), summary judgment will be granted in Milliman's favor.

## IV. CONCLUSION

On the basis of the foregoing, Milliman's Motion for Summary Judgment will be granted, while Plaintiff's Cross Motion for Summary Judgment (Docket No. 29) and Motion for Partial Summary Judgment to Establish Defendant's Liability (Docket No. 32) will be denied. With those rulings, Milliman's Motion Pursuant to Rule 56(f) (Docket No. 44) and Plaintiff's Motion to Ascertain Status of Pending Motions for Summary Judgment (Docket No. 55) will be denied as moot.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE

10